Prudence Tallman **WOOD**, Plaintiff,

v.

James S. **WOOD** et al., Defendants.

No. 67 Civ. 2513.

United States District Court,
S. D. New York.

Jan. 23, 1969.

---

See also, D.C., 312 F.Supp. 762.

Stroock & Stroock & Lavan, New York City, for plaintiff; Charles G. Moerdler, Gerald D. Fischer, Pat G. Nicolette, New York City, of counsel.

White & Case, New York City, for defendant Bankers Trust Co.; David Hartfield, Jr., Paul J. Bschorr, New York City, of counsel.

## OPINION

McLEAN, District Judge.

Defendant Bankers Trust Company (Bankers) moves for summary judgment on the ground that this action is barred as to it by the three-year statute of limitations contained in Section 49 of the New York Civil Practice Act. Jurisdiction of the subject matter of the action is based on diversity of citizenship. The transactions complained of, as far as Bankers is concerned, occurred in New York. It is clear that New York law governs the question of the statute of limitations, and that the New York law to be applied is the Civil Practice Act, rather than the CPLR, because the cause of action accrued before the CPLR became effective on September 1, 1963 (see CPLR § 218).

The point at issue is whether this is an action for conversion or an action "to recover a chattel" within the meaning of Section 48(4) of the Civil Practice Act. Under the Civil Practice Act, the statute of limitations applicable to the former was three years (CPA § 49(7)), and to the latter six years (CPA § 48(4)). Plaintiff's claim against Bankers could not have arisen later than May 29, 1963. The action was begun on June 29, 1967, over four years later. Hence, if the three-year statute governs, the action is

barred; if the six-year statute applies, it is not.

Although the complaint names 24 defendants, we are concerned on this motion with only one, Bankers, and we need consider only the allegations which pertain to it. Bankers is named a defendant in only one count, the second. For reasons not apparent to the court, it has filed an answer not only to the second count, but also to the first, some but not all, of the allegations of which are incorporated by reference in the second count.

The complaint in this action is 46 pages long. It is filled with rambling, loose-jointed allegations, many of them concerned with evidentiary details. It is by no means the "short and plain statement of the claim" which Rule 8 requires.

As far as Bankers is concerned, plaintiff's grievance relates primarily to a certificate for 5,609 shares of stock of Christiana Securities Company (Christiana) allegedly the property of plaintiff. Also involved are United States Treasury bills in the face amount of $82,500, the status of which is somewhat obscure under the allegations of the complaint, but which is made clear enough by the moving affidavits, which are uncontroverted in this respect.

Stripped of unnecessary details, plaintiff's claim as to the Christiana stock may be summarized as follows. Plaintiff's husband, defendant Wood, acting pursuant to a conspiracy with defendants Belmont and Hydrocarbon Chemicals, Inc. (Hydrocarbon), "and others presently unknown" to plaintiff, stole this stock certificate, which was registered in plaintiff's name, forged her name to a stock power attached to it, and pledged the certificate with Bankers as collateral security for a loan then made by Bankers to Wood. At the same time Wood forged plaintiff's name to two hypothecation agreements on Bankers' forms pledging the stock. The Bank of Commerce, where plaintiff had an account, guaranteed plaintiff's signa-ture on these instruments. This occurred in March 1962. The complaint does not allege that Bankers knew of the forgery. What plaintiff complains of is that Bankers made the loan to Wood on the strength of the pledged certificate without first communicating with her.

The complaint goes on to allege that Bankers increased the amount of its loan to Wood from time to time, with the result that by March 20, 1963 it amounted to $575,000. On that date the loan was "shifted to" defendant Girard Trust Company (Girard). This means that on or about that date, Wood borrowed $575,000 from Girard which, upon Wood's instructions, paid this sum to Bankers in payment of Bankers' outstanding loan to Wood. Bankers thereupon delivered the certificate for the Christiana stock to Girard. The complaint does not allege that at this time Bankers knew of plaintiff's claim of title to the stock.

The $82,500 principal amount of United States Treasury bills came into existence, according to the complaint, in the following fashion. On March 20, 1963, when Girard loaned Wood the $575,000, it also loaned him an additional $82,500, making $657,500 in all. Girard paid the $82,500 to Bankers. Wood forged plaintiff's name to instructions to Bankers directing Bankers to use this money to buy Treasury bills and to "hold these Treasury bills as collateral for a balance of its loans to Wood."

The affidavits in support of Bankers' motion set forth the facts as to what Bankers did. As far as the Christiana stock is concerned, these facts are substantially the same as plaintiff claims in her complaint. In March 1962, Bankers took the stock as collateral for its loan to Wood in the eventual amount of $575,000. In March 1963 this loan was paid by Girard, whereupon Bankers delivered the stock certificate to Girard and has never since had it in its possession.

The moving affidavits clarify the situation with regard to the Treasury bills.

Bankers received the $82,500 from Girard in March 1963. Wood instructed Bankers to invest this money in Treasury bills. These instructions were purportedly countersigned by plaintiff. Bankers purchased Treasury bills in the amount of $82,000 at a cost of $81,409.-60 and deposited the balance of the $82,500, i. e., $1,090.40 in a cash account. Pursuant to Wood's instructions, Bankers held the bills and the small cash balance as security for certain loans which Bankers had made, not directly to Wood, but to Hydrocarbon, on which Wood was liable as an endorser. On or about May 29, 1963, Bankers, on Wood's instructions, sold the Treasury bills and applied the proceeds (and presumably also the cash balance of $1,090.40) in payment of Hydrocarbon's loan. Bankers has never possessed the Treasury bills since. These facts are uncontroverted by the opposing affidavits and must be accepted as true on this motion.

Bankers' position is that if it is liable to plaintiff at all, it can only be liable for converting her stock certificate and her Treasury bills, that the conversion of the stock occurred either in 1962, when Bankers accepted it in pledge, or in 1963 when it delivered the certificate to Girard, and that, as far as the Treasury bills are concerned, the conversion could have occurred only in 1963. Since the action was not begun until 1967, Bankers claims that it is barred by the three-year statute.

Plaintiff's position is that her action is not for conversion, but is an action for replevin, or, in the language of the Civil Practice Act, "an action to recover a chattel." In an effort to support this theory, the complaint alleges that Bankers is "unlawfully withholding" the Christiana stock, and that Bankers "took possession of my 5,609 shares of Christiana shares [sic] and has never delivered them to me." As to the Treasury bills, she alleges that Bankers "has never delivered [them] to me," and that Bankers holds them "as constructive trustee for me." The prayer for relief asks that it be adjudged that Bankers "has been and is withholding unlawfully from me 5,609 shares in Christiana Securities Co. * * * and also $82,500 in face value of U.S. Treasury bills." It asks that Bankers be directed to "forthwith restore said securities and pay damages for the detention thereof * * * or if said securities are not in the possession of defendant, that defendant be adjudged to pay the amount of the value of said securities and the said damages."

The claim of "withholding" and the prayer for a judgment directing Bankers to "restore" the securities to plaintiff seem disingenuous. It is perfectly plain from the allegations of the complaint itself, as to the stock, and entirely clear from the uncontroverted facts in the moving affidavits, both as to the stock and the Treasury bills, that Bankers does not possess the securities, has not possessed them since May 1963, is not withholding them and is in no position to restore them. On the undisputed facts, it is hard to see how, in any realistic sense, this action can be said to be one to "recover a chattel."

Moreover, under Article 66 of the Civil Practice Act, replevin was, in effect, a provisional remedy. By appropriate affidavit, and upon posting a bond, a plaintiff could require the sheriff to take possession of the chattel which he claimed. No such procedure has been followed in this case. As against Bankers, plaintiff is seeking only a money judgment. The action was begun by the service of a summons and complaint in the usual way.

Plaintiff relies primarily upon an old New York case which held that an action for "claim and delivery," apparently a substitute for replevin, could be maintained against a defendant who had obtained possession of plaintiff's property by fraud, even though defendant had parted with possession before the action was commenced. Nichols v. Michael, 23 N.Y. 264 (1861) see also Barnett v. Selling, 70 N.Y. 492 (1877).

In *Nichols*, the court emphasized that both defendant's original possession of the property and his subsequent disposition of it was "wrongful." A subsequent decision, Sinnott v. Feiock, 165 N.Y. 444, 59 N.E. 265 (1901), distinguished *Nichols*, because although Feiock had acted wrongfully in obtaining the property by fraud, he had parted with it involuntarily by virtue of an execution levied against it by one of his creditors. The court said that to hold that replevin would lie when defendant had lost possession "without fault on the defendant's part," would be equivalent to holding that an action for replevin "can be maintained under all circumstances to the same extent as an action for conversion. Such a doctrine would substantially destroy the characteristics of an action of replevin which distinguish it as an action to recover possession of specific property, * * *" 165 N.Y. at 448, 59 N.E. at 266.

Assuming that this ancient learning is still good law in New York today, the factual situation here, according to the allegations of plaintiff's own complaint, is quite different from that in *Nichols*. There is no allegation that Bankers obtained possession of plaintiff's stock by fraud. As to the Treasury bills, plaintiff never had possession of them. They came into existence only because Bankers, on Wood's instructions, used money supplied by Girard to buy them. And plaintiff's allegation that Bankers' loan to Wood was "shifted" to Girard, can hardly be said to charge that Bankers' surrender of possession was "wrongful."

■ In the affidavits submitted in opposition to this motion, plaintiff has attempted to bolster her complaint by asserting that one of Bankers' officers conspired with Wood. Plaintiff supplies no evidence to substantiate this charge. Her bare unsupported assertion is insufficient to raise a genuine issue of fact which would require a trial.

■■ The distinction drawn by the Civil Practice Act, for statute of limitation purposes, between an action for conversion and an action to recover a chattel (a distinction which has since been abolished by the CPLR), was not intended, in the court's opinion, to permit a plaintiff to extend the statutory period merely by characterizing his claim as one to recover property when it clearly appears from his own complaint that defendant does not possess the property and has not possessed it for a number of years. "Withholding" and "restore" are merely labels, words which are inappropriate to plaintiff's claim. In substance, this is an action to recovery money damages for the alleged conversion of plaintiff's property. As such, it is barred by the statute. Defendant Bankers' motion for summary judgment is granted.

So ordered.